**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| MEKUS SAMUEL,<br><br>             Plaintiff(s),<br><br>v.<br><br>NORTH WEST COMPANY (INTERNATIONAL), INC. d/b/a COST-U-LESS, INC. AND SUCCESSOR TO COST-U-LESS, INC,<br><br>             Defendant(s). | Civil No. 1:13-CV-31<br><br>**ACTION FOR DAMAGES**<br><br><u>JURY TRIAL DEMANDED</u> |

**AMENDED COMPLAINT**

**COMES NOW** Plaintiff, MEKUS SAMUEL, by and through undersigned counsel, and files his Complaint against Defendant NORTH WEST COMPANY (INTERNATIONAL), INC. d/b/a COST-U-LESS, INC. AND SUCCESSOR TO COST-U-LESS, INC., and alleges the following:

1. This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et. seq.  Jurisdiction of this Court is invoked pursuant to 42 U.S.C.A. § 2000e-5(f), 28 U.S.C.A. § 1343 (4), and U.S.C.A. §§ 2201 and 2202. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42 U.S.C.A. §§ 2000e et. seq., providing for injunctive and other relief against racial, religious, national origin, and sex discrimination in employment, and by 42 U.S.C.A. § 1981, provides for equal rights of all persons in every state and territory within the jurisdiction

**LEE J. ROHN AND ASSOCIATES, LLC**
1101 King Street
Christiansted
VI 00820-4933
Tel:  340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 2

of the United States.

2. This Court also has jurisdiction pursuant to 28 U.S.C § 1332, and due to the complete diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75, 000.00.

3. Cost-U-Less Inc. during all times relevant was a corporation incorporated in Washington with its principal place of business in Bellevue, Washington.

4. Cost-U-Less Inc. was purchased by North West Company (International), Inc. which is incorporated in Delaware and has its principal place of business in Winnipeg, Canada.

5. North West Company (International), Inc. does business in the United States Virgin Islands as Cost-U-Less, Inc.

6. Plaintiff Mekus Samuel is a black West Indian male who is over forty (40) and a resident of the United States Virgin Islands.

7. Plaintiff was first employed by Cost-U-Less, Inc. on January 15, 2002 as the Receiving Manager for the St. Marten store. He was interviewed and hired by Roy Sorenson of Cost-U-Less, Inc.

8. After five (5) months, Cost-U-Less, Inc. transferred Plaintiff to St. Croix to work at the same or similar job.

9. After about six (6) months in St. Croix, Plaintiff's job responsibilities were increased by Cost-U-Less, Inc. to include supervision over the freezer, the cooler, and receiving departments, but Plaintiff was not given the appropriate additional pay for the additional work.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 3

10. In May of 2003, Plaintiff was made Foods Department Manager but again was not given the appropriate pay that the white workers were paid.

11. In August of 2006, Plaintiff was made Assistant Store Manager and again was not paid the same pay as the similarly situated white employee.

12. Plaintiff was qualified to be promoted to store manager but Cost-U-Less, Inc., as a result of discrimination based on race, color and national origin, appointed Scott Ramsey (white non West Indian) to that position. Ramsey was far less qualified and less experienced than Plaintiff. In addition Ramsey had a drinking problem and multiple DUI arrests.

13. As a result of discrimination, Plaintiff was paid $30,000 a year less than Ramsey even though Ramsey was frequently not in the store and Plaintiff actually performed most of the manager functions..

14. In 2007, North West Company purchased Cost-U-Less, Inc. and kept the same employees in the same positions, the same employment policies and practices, and the same discriminatory pay.

15. In June 2010, Plaintiff participated in a conference call with Tom Kallio (Plaintiff's indirect report) and Charlie Hyde (Caribbean Regional Manager at the time and Plaintiff's direct report) to discuss avenues for Plaintiff's future development in light of Plaintiff's recent completion of his MBA in finance, and to discuss the gross disparity of pay between Plaintiff and Ramsey.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 4

16. Plaintiff was falsely informed that there were virtually no management opportunities for Plaintiff as there were no vacancies in the island stores and Kallio falsely claimed that the pay disparity was as a result of industry standards.

17. In June 2011, Ramsey was finally terminated. While Plaintiff should have been made store manager given his experience and qualifications, as a result of discrimination, he was only appointed to be Interim Store Manager and was told that the Defendant was looking for a store manager other than him.

18. Plaintiff in June 2011, had ten (10) years of management experience with Cost-U-Less, Inc., three (3) years of prior store manager experience, a Bachelor's degree in Business Management, an MBA in Finance and was working on his doctorate in leadership. Plaintiff was assigned all the duties of the store manager as well as his duties as Assistant Store Manager but only received a ten percent (10%) raise and was paid far less than the white non West Indian store managers.

19. In October of 2011, Craig Gilpin, the Chief Corporate Officer, made a store visit to Plaintiff's store. Plaintiff complained to him as to the length of time he had been an interim store manager, the fact that he should have been placed in the position of store manager in June 2011, the disparity in his pay, and other discriminatory acts by Defendant.

20. Gilpin admitted that Plaintiff had been in an interim position for a much longer period than Defendant's policy provided and promised to investigate.

21. To Plaintiff's knowledge no investigation was conducted.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 5

22. About a month later Tom Kallio came for a store visit. He informed Plaintiff that Plaintiff would be appointed the store manager in February 2012 but provided no reason for the delay in appointing him. The failure to promptly appoint Plaintiff to the store manager position was the result of discrimination.

23. In February 2012, Hyde was terminated and Plaintiff reported directly to Kallio. Kallio had a hostile attitude toward Plaintiff and his mannerisms toward Plaintiff were arrogant, aloof, boorish and denigrating as a result of his discriminatory attitude toward Plaintiff as a result of his being a black West Indian.

24. Kallio treated the black West Indian manager of the St. Thomas store, Allison Hesky, in the same manner and Hesky voiced the same complaints about Kallio.

25. On February 1, 2012, Plaintiff was not appointed to store manager as had been represented to him.

26. On February 5, 2012, Plaintiff traveled to a Corporate Management Meeting in Canada and saw Gilpin. Gilpin asked Plaintiff how he liked his new position of store manager. Plaintiff explained he had never been given the position. Gilpin admitted that the failure to promptly appoint Plaintiff to the manager position was "ridiculous" and promised to investigate.

27. On February 7, 2012, Tom Kallio met with Plaintiff and provided him a letter appointing Plaintiff as store manager. He did so in a negative way and it was clear that he was not in favor of the decision.

28. The appointment letter set Plaintiff's annual salary at $75,000 which was $20,000 less a year than the prior manager and did not provide Plaintiff with the

same benefits of the non black West Indian store managers, despite the fact that Plaintiff had more experience and greater qualifications than the other store managers.

29. Plaintiff complained to Kallio about the disparity in pay and benefits. Kallio, on behalf of Defendant, falsely told Plaintiff that the salary was the standard amount allowed for the position by Defendant and that he could not be paid more. This statement was false as the position had been advertised on Career Builder.Com for a higher salary range.

30. Kallio falsely told Plaintiff that he would be able to make up for the low salary with bonuses. That never happened.

31. In February 2012, Defendant finally hired an Assistant Store Manager, Dewayne Thomas, for Plaintiff's store. He began to inform the employees at the store that he was actually hired to become the new manager of the store which Plaintiff learned of. As a result, Plaintiff called Gilpin to inform him of what was occurring and to complain about what appeared to be additional discrimination. Gilpin informed Plaintiff that it was not true and not to worry, and informed Plaintiff that Defendant felt he was an excellent manager.

32. In late February or March 2012, an email was sent out by the President of Defendant, Rex Wilhelm (white), inadvertently to all store managers through the Weekly Information Minutes (EIM) when it was meant to go to the CEO. It stated what managers were being slated for replacement including Hesky and also

revealed that Defendant was moving to replace Tom Kallio by the end of the year.

33. It is the policy of Defendant that each May store managers are to receive yearly incremental increases in salary automatically, Plaintiff did not receive this incremental increase as a result of discrimination.

34. Plaintiff wrote to Kallio complaining Plaintiff had not received his incremental salary increase. Kallio never responded.

35. In May 2012, Plaintiff was informed by a reliable source that Dewayne Thomas was stating that Plaintiff was to be terminated in August of 2012 and he would take Plaintiff's job as store manager.

36. In July 2012, Plaintiff wrote to Kallio's higher up, Joe Bryant, and blind copied Gilpin again complaining that he had not received is incremental pay increase.

37. The next pay period Plaintiff finally received his incremental pay increase but it was not made retroactive to May, 2012.

38. In July 2012, Defendant sent Plaintiff training and coaching tools and for the first time Plaintiff was informed his store was not up to some inarticulated standards. Plaintiff was unaware of any such written standards and inquired where they were contained but received no response. Plaintiff had received a store visit by Gilpin in October 2011 that was very favorable and he was informed he was doing a great job, that the store was operating well, and the employees were working well.

SAMUEL, MEKUS V. COST-U-LESS, INC
AMENDED COMPLAINT
Page 8

39. Despite receiving the coaching memo, Plaintiff did not receive any additional training or any information as to where to find the store standards or what they were. Nonetheless, Plaintiff strived to improve the store, polled customers as to what their impressions were of the store, and constantly received back positive comments.

40. In mid August 2012 when Plaintiff returned from his vacation, he received a call from a corporate buyer, Erica Osario, inquiring whether Plaintiff was still the store manager as she had heard he had been terminated.

41. On August 23, 2012 at 7:41 pm, the same day as Tropical Storm Isaac was threatening to hit St. Croix, Plaintiff received a text message from Kenneth Donowa that Tom Kallio was in the store taking pictures and said he would return the next morning.

42. On August 24, 2012 at 9:03 a.m., Plaintiff received a call from Lorna Joseph that Tom Kallio was in the store in the perishable area. At 9:47 a.m. Plaintiff met Kallio at the front of the store along with the Assistant Store Manager, Dewayne Thomas. Plaintiff asked Kallio how the store looked and Kallio falsely and insultingly told Plaintiff it looked like a junk box. Kallio then criticized Plaintiff for having gas cans and chafing fuel at the front of the store. Plaintiff informed Kallio that there had been a storm warning yesterday and St. Croix was still under a flood warning and that the merchandise was put in the front to be easier to purchase.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 9

43. Kallio then demanded to see the store's latest competitive check and price audit sheets, which were provided.  Then Kallio demanded to see the stores Price Audit Map.  Plaintiff had never heard of that document.  Plaintiff called the store manager at the St. Thomas store, Eldon Drodge, and he was unaware of any such document. Plaintiff also checked with the former manager of the St. Thomas store, Allison Hesky, and he, too, had never heard of such a document.

44. On September 4, 2012, Plaintiff received a written notice that he was being terminated effective immediately signed by Tom Kallio as Vice President and General Manager of Cost-U-Less, Inc. on NorthWest stationary and on behalf of Northwest.  The letter listed no grounds for the termination.  Verbally plaintiff was told the store did not meet some unspecified standard

45. Defendant has a pattern and practice of racial  and national origin discrimination and creating a hostile work environment for black West Indian employees for instance:

    a. Michael Benson (white non West Indian) was the Regional Perishable Specialist.  He would come to work and sleep which was observed by management employees (including Scott Ramsey, Charlie Hyde and Tom Kallio, all white), regular employees and vendors. The employee handbook lists sleeping on the job as a terminable offense. Benson was neither disciplined nor terminated but rather received a pay increase and a promotion.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 10

    b. Black West Indian employees were constantly watched, criticized and held to a higher standard than the white non West Indian employees.

    c. Portia Languedoc and Calvin Erskine (black West Indians) were terminated by Defendant for using profanity in the workplace. Scott Ramsey used profanity in the work place all the time which was reported to management and he was not similarly disciplined. Joe Bryant (white non West Indian) the Regional Manager likewise uses profanity in the work place and is not disciplined.

    d. While Plaintiff was store manager in St. Croix, Allison Hesky (black West Indian), was store manager in St. Thomas. Plaintiff had occasions to witness his job performance and saw that he was a good and competent manager. Defendant sent to St. Thomas Eldon Drodge (white Non West Indian) and falsely represented that Hesky needed to train him to be the new manager of the St. Maarten store. In reality he was being trained to replace Hesky. In February 2012 after nineteen (19) years at Cost-U-Less, Hesky was terminated for improper reasons and Drodge was made manager and received, upon information, higher pay and benefits despite far less qualifications and experience.

    e. In September 2012, a white store manager was appointed to the St. Maarten store who had no prior warehouse or store managerial experience. Upon information, he was paid more money and benefits then black West Indians of comparable experience and qualifications.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 11

46. Plaintiff was discriminated against in his pay, benefits, promotions, treatment, and termination and subjected to a hostile work environment as a result of his race, color and national origin and retaliated against for having complained about the same.

47. Plaintiff filed a Complaint with the EEOC..

48. Plaintiff has requested a Right to Sue letter.

49. Plaintiff filed a Complaint with the Civil Rights Commission of the Virgin Islands on September 17, 2012.

50. As a result of the actions of the Defendant, Plaintiff suffered loss of income, loss of capacity to earn income, economic damages, mental anguish, physical and psychological injuries, medical expenses, pain and suffering and loss of enjoyment of life all of which are expected to continue into the foreseeable future.

## COUNT I

51. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

52. The actions of the Defendant are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et. seq.

53. As a result Plaintiff has suffered damages as alleged herein.

## COUNT II

54. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

55. Defendant violated Title 24 VIC 451, the Virgin Islands Civil Rights statute.

56. As a result Plaintiff has suffered damages as alleged herein.

**SAMUEL, MEKUS V. COST-U-LESS, INC**
**AMENDED COMPLAINT**
Page 12

## COUNT III

57. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

58. The Defendant intentionally inflicted emotional distress on the Plaintiff.

59. As a result, the Plaintiff has been damaged as alleged herein.

## COUNT IV

60. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

61. The Plaintiff was an at will employee and as such subject to an implied contract of good faith and fair dealing.

62. Defendant breached its duty of good faith and fair dealing when it fired Plaintiff for false reasons and used deceit during Plaintiff's employment to try and conceal its discrimination.

63. As a result Plaintiff suffered damages as alleged herein.

## COUNT V

64. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

65. Plaintiff was subjected to a hostile work environment by Defendant.

66. As a result Plaintiff suffered damages as alleged herein.

## COUNT VI

67. Plaintiff re-alleges and incorporates by reference each of the paragraphs above.

68.   Defendant defamed Plaintiff per se when it informed vendors, employees of Defendant and others that Plaintiff was not a good worker, was not meeting company standards, was not performing his work satisfactorily and other false statements

69.   As a result, Plaintiff has suffered damages as alleged herein.

**WHEREFORE**, Plaintiff seeks compensatory and punitive damages, pre and post judgment interest, costs and fees and such other relief as this court deems fair and just.

LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Plaintiff

DATED:  May 7, 2013         BY:   s/ *Lee J. Rohn*
                                                        Lee J. Rohn
                                                        VI Bar No. 52
                                                        1101 King Street
                                                        Christiansted, St. Croix
                                                        U.S. Virgin Islands 00820
                                                        Telephone: (340) 778-8855
                                                        Email: lee@rohnlaw.com